**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**V.**                          **CASE NO. 5:23-CR-50014-001**

**TORRANCE FARMER**                                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

On August 14, 2024, a jury convicted Torrance Farmer of being a felon in unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Government also brought a sentencing allegation under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA"). The ACCA states,

> a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, . . . shall be fined under this title and imprisoned *not less than fifteen years*.

18 U.S.C. § 924(e)(1) (emphasis added). Absent the ACCA enhancement, Farmer faces a ten-year maximum sentence. 18 U.S.C. § 924(a)(2) (2018).[1]

A defendant is "entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Erlinger v. United States*, 602 U.S. 821, 835 (2024). Here, the Government put forth five prior convictions as ACCA predicate offenses. Following the jury's conviction, the Court submitted the occasions question to the jury, and the jury returned a special verdict that unanimously and beyond a reasonable doubt found that all five predicate offenses were committed on occasions different from

---

[1] Section 924(a)(2) was amended in June 2022 to change the maximum sentence for § 922(g) convictions from ten years to fifteen years. Farmer committed the offense conduct in February 2022, before this change went into effect.

1

one another. The five predicate offenses here include: three convictions for either delivery or possession with intent to deliver a controlled substance, namely crack cocaine under Arkansas Code § 5-64-401; one conviction for terroristic threatening in the first degree under Arkansas Code § 5-13-301; and one conviction for battery in the second degree under Arkansas Code § 5-13-202.

On November 6, 2024, Farmer filed his Sentencing Memorandum (Doc. 75),[2] objecting to the application of the ACCA and arguing that his three cocaine convictions cannot count as serious drug offenses under the ACCA because relevant Arkansas law criminalized more conduct than relevant federal law at the time he committed these offenses—more specifically, that Arkansas criminalized certain isomers of cocaine that federal law did not. *Brown v. United States*, 602 U.S. 101, 120, 123 (2024) ("[U]nder § 924 past state drug possession offenses may qualify as ACCA predicates if the federal and state schedules matched when the state crimes occurred."). On January 17, 2025, the Court held an evidentiary hearing where it received testimony from the Government's expert, Tara Lucas, Chief Forensic Chemist at the Arkansas state crime lab, and heard argument from both parties. For the reasons stated in this Order, the Court finds that the ACCA can be applied to Farmer, and it, therefore, **OVERRULES** the objection.

## I.   *UNITED STATES V. MEUX IS DISPOSITIVE*

In *United States v. Meux*, 918 F.3d 589 (8th Cir. 2019), the Eighth Circuit held the "district court did not err in finding" convictions for delivering a controlled substance and

---

[2] Farmer first raised this issue on the eve of trial by filing a Motion to Permit Filing of Motion to Dismiss Sentencing Allegation Under 18 U.S.C. § 924(e)(1) (Doc. 57). After discussion between the Court and the parties prior to *voir dire*, defense counsel withdrew its motion, with the understanding that it could raise it again at sentencing. *See* Doc. 62.

possession with intent to deliver a controlled substance under Arkansas Code § 5-64-401(a) "qualif[ied] as serious drug offenses" under the ACCA. *Id.* at 591. The Government argues *Meux* is dispositive here, citing *United States v. Hamilton*, 835 F. App'x 170 (8th Cir. 2021) (unpublished) in support.

In *Meux*, the parties argued that § 5-64-101 was overbroad because of the terms "manufacture" and "deliver," *see Meux App. Br.*, 2018 WL 1951514, at *6—neither the parties nor the court discussed the isomer issue presented in the case at bar. Nevertheless, "the panel did discuss the issue" of whether a cocaine conviction under § 5-65-401(a) constituted a serious drug offense under the ACCA, and its holding that such a conviction fell within the ACCA was "essential to its disposition of the case." *Hamilton*, 835 F. App'x at 171; *see Meux*, 918 F.3d at 591; *Meux App. Br.*, 2018 WL 1951514, at *3 (specifying prior convictions for cocaine).

Due to the explicit nature of the holding in *Meux* with respect to § 5-64-401(a), the Court is bound by the Eighth Circuit's conclusion that the cocaine offenses at issue in this case qualify as serious drug offenses under the ACCA. *See, e.g.*, *United States v. Kerstetter*, 2025 WL 1079071, at *3 (5th Cir. Apr. 10, 2025) (per curiam) (unpublished) (stating the defendant's overbreadth argument regarding cocaine isomers was "foreclosed" by, *inter alia*, *United States v. Vickers*, 540 F.3d 356 (5th Cir. 2008), which held the offense in question was a serious drug offense on reasoning unrelated to the isomer question); *United States v. Simons*, 2025 U.S. Dist. LEXIS 65, *3 (E.D. Ark. Jan. 2, 2025) (Judge Brian Miller stating, in reliance on *Meux*, that the defendant's "cocaine conviction is an ACCA predicate drug offense").

However, the Court also notes *Meux*—which does not address the isomer arguments—cannot be squared with the Eighth Circuit's more recent holdings that nearly identical state statutes that criminalize more isomers of cocaine than the federal statute are overly broad. *United States v. Myers*, 56 F.4th 595 (8th Cir. 2022) (Missouri definition of cocaine); *United States v. Owen*, 51 F.4th 292, 296 (8th Cir. 2022) (per curiam) (Minnesota definition of cocaine); *see also United States v. Heard*, 62 F.4th 1109, 1112 (8th Cir. 2023) ("If an isomer is prohibited by [the administrative rules] or [the criminal statute], but not by federal law, the [state] law is broader than federal regulations."). Thus, although the Court believes it is bound to apply the ACCA here pursuant to the Eighth Circuit's decision in *Meux*, it explains below its reasoning as to why the ACCA would likely not apply under these more recent Eighth Circuit decisions. [3]

---

[3] The Court notes some concern in the ongoing applicability of *Meux*, but it ultimately concludes the Eighth Circuit is better positioned to clarify *Meux*'s reach. *See Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018) ("[W]here a precedent . . . has direct application in a case, [the court] should follow it, even if a later decision arguably undermines some of its reasoning." (citing *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

To start, *Owen*, *Myers*, and *Heard* came out shortly after another Eighth Circuit case, *United States v. Perez*, 46 F.4th 691 (8th Cir. 2022), in which the court explained that "the categorical approach requires comparison of the state drug schedule at the time of the prior state offense to the federal schedule at the time of the federal offense." *Id.* at 700. *Meux*, decided before *Perez*, did not undertake a drug schedule comparison. *See* 918 F.3d at 591–92.

Then, in 2024, the Supreme Court in *Brown* confirmed that comparing the drug schedules was the correct approach. *See* 602 U.S. at 120, 123 ("[U]nder § 924 past state drug possession offenses may qualify as ACCA predicates if the federal and state schedules matched when the state crimes occurred."). And in analyzing the applicability of *Meux* in the context of a motion under 28 U.S.C. § 2255, Chief Judge for the Eastern District of Arkansas Kristine Baker has acknowledged that the Supreme Court's decision in *Brown* "calls into question the analysis and holding of *Meux* as it relates to methamphetamine convictions in the State of Arkansas qualifying as predicate ACCA offenses." *United States v. Holdford*, 2024 WL 4350792, n.2 (E.D. Ark. Sept. 30, 2024).

## II. DISCUSSION OF THE MODIFIED CATEGORICAL APPROACH UNDER RECENT PRECEDENT: *MYERS*, *OWEN*, AND *HEARD*

### A. The Categorical Approach

#### 1. Overview

The term "serious drug offense" is defined by the ACCA in relevant part as:

an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii).

"Courts determine whether a prior conviction qualifies as a serious drug offense by looking to the scope of the state law, not to the specific facts underlying the prior conviction." *United States v. Myers*, 56 F.4th 595, 597 (8th Cir. 2022) (citations omitted). "This 'categorical approach' focuses solely on whether the elements of the crime of conviction match the corresponding federal drug offense." *Id.* at 597–98 (citations

---

The desirability of the Eighth Circuit ironing out *Meux*'s applicability in light of these more recent cases is further bolstered by its recent decision in *United States v. Buckley*, 2025 WL 2112862 (8th Cir. July 29, 2025), in which the Eighth Circuit addressed an isomer argument for a cocaine conviction in the ACCA context under a different Arkansas statute, § 5-64-420(a)(1) (2011). There, the Eighth Circuit held the underlying Arkansas conviction qualified as a serious drug offense because §§ 5-64-420 and 5-64-422's use of the word "cocaine" did not intend to incorporate Arkansas's drug schedules but intended to give cocaine its ordinary meaning. *Id.* at *2. The Court noted, "had the Arkansas legislature wanted the term cocaine . . . to mean something beyond its ordinary sense, it would likely have focused on a different statutory provision from the drug schedules," like Arkansas Code § 5-64-101(16)(B)(iv) (2011). *Id.* at *2.

While *Buckley* is not directly on point here as it deals with a different statute, it is an example of how the Eighth Circuit may not take up a drug schedule comparison in every case. While *Buckley*'s reference to § 5-64-101(16)(B)(iv) (2011)—the definitional provision at issue in Mr. Farmer's case, then codified at § 5-64-101(o)—suggests that the Eighth Circuit might reconsider *Meux*, it is not for this Court to guess at such things.

omitted). "How a given defendant actually perpetrated the crime—what [has been] referred to as the underlying brute facts or means of commission—makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence." *Mathis v. United States*, 579 U.S. 500, 509 (2016) (citation and quotation marks omitted). "Accordingly, a sentencing judge may look only to the elements of the offense, not to the facts of the defendant's conduct." *Id.* at 510 (cleaned up). "That simple point" is now a "mantra" in "ACCA decisions." *Id.*

"Under the categorical approach, the ultimate burden is on the government to prove that the prior conviction is a qualifying offense under the ACCA." *Myers*, 56 F.4th at 598 (citations omitted). "To determine whether a state statute sweeps more broadly, [courts] examine its text and structure. In doing so, [courts] apply [the state's] principles of statutory construction . . . ." *Id.* (citations and internal quotation marks omitted).

### 2.  *Divisibility and the Modified Categorical Approach*

"When a statute contains alternatives, [a court's] job is first to determine whether they are divisible elements or merely alternative means." *United States v. Ford*, 888 F.3d 922, 928 (8th Cir. 2018) (citing *Mathis*, 579 U.S. at 517). "'Elements' must be proven to sustain a conviction, while 'means' are 'brute facts' that need not be found by a jury nor admitted by a defendant to convict." *Id.* (quoting *Mathis*, 579 U.S. at 504). When a court "conclude[s] that a statute's alternatives are divisible elements that define multiple crimes, [the court] use[s] the 'modified categorical approach,' examining certain documents from the record to determine the elements necessary for the defendant's conviction and

compar[ing] them with the generic offense." *Id.* at 928–29 (citing *Mathis*, 579 U.S. at 505–06).

The Eighth Circuit has previously held that Arkansas Code § 5-64-401 is divisible as to its separate offenses. *Meux*, 918 F.3d at 591. Looking to the *Shepard* Documents here, the relevant convictions were all Class Y Felonies, so the Court can conclude that Farmer was convicted under § 5-64-401(a)(1)(i) (2000), as it is the only subsection that includes Class Y Felonies. Subsection (a)(1)(i) criminalizes possession and delivery of a "narcotic drug or methamphetamine." For purposes of this discussion, the Court cabins its comparison to the state and federal definitions of cocaine.[4]

---

[4] The Court makes the following observations:

Section 5-64-401 suggests that the statute is divisible at least as to "narcotic drug" and "methamphetamine." *See* Ark. Code Ann. § 5-64-401(a)(1)(i) (2000) ("*a* controlled substance classified in Schedule I or Schedule II that is a narcotic drug or methamphetamine." (emphasis added)); *see Martinez v. Sessions*, 893 F.3d 1067, 1071 (8th Cir. 2018) (citing to Missouri court decisions that rejected double jeopardy challenges for multiple convictions under the same statute for different substances, in part, because the statute of conviction forbade possession/distribution of "*a* controlled substance" (emphasis added)); *Rendon v. Barr*, 952 F.3d 963, 969 (8th Cir. 2020) (noting the relevant statute "prefaces 'controlled substance' with '*a*,' indicating the phrase is limited to one substance per offense." (emphasis added)).

Additionally, Arkansas's Model Jury Instructions for possession and delivery of controlled substances provide a blank for the name of the controlled substance, suggesting that drug type is an element of the offense. *See* 1 Ark. Model Jury Instructions – Criminal AMCI 2d 6407 & 6408-VF; 1 Ark. Model Jury Instructions – Criminal AMCI 2d 6406 & 6408-VF.

Arkansas state-court decisions suggest that § 5-64-401 is divisible as to methamphetamine and cocaine. *See Robelo v. State*, 2012 Ark. App. 425, at 1, 6, 10, *supplemented by denial of reh'g*, 2012 Ark. App. 488 (2012) (finding sufficient evidence to sustain verdict of simultaneous possession of methamphetamine and cocaine under § 5-64-401). Some Arkansas caselaw suggests that the statute may not be further divisible by the type of narcotic drug. *Pitts v. State*, 256 Ark. 693, 695 (1974) ("[T]he simultaneous possession for delivery of drugs classified as a narcotic drug under subsection (a)(1)(i) constitutes but one offense."); *c.f. Williams v. State*, 1993 WL 472807,

Despite the conviction explicitly stating it was for "Crack Cocaine," the Court does not restrict its comparison to the Arkansas and federal definitions of *crack* cocaine because the structure of the relevant statutes and schedules group all forms of cocaine (and its prohibited isomers and derivatives) together. The statute does not impose different punishments based on the type, form, or derivative. And simultaneous possession or delivery of crack and powder cocaine is prosecuted as one offense in Arkansas. *See Edwards v. State*, 2024 Ark. App. 431, at 1–2 (2024); *Lewis v. State*, 2010 Ark. App. 641, at 3 (2010); *Lovett v. State*, 2011 Ark. App. 418, at 3 (2011); *Lomax v. State*, 2008 WL 241372, at *2–*3 (Ark. Ct. App. Jan. 30, 2008); *Roston v. State*, 2006 WL 715784, at *1 (Ark. Ct. App. Mar. 22, 2006).

Thus, there is no indication that a finding of crack cocaine (as opposed to some other form or derivative) is an element that "must be prove[n]" or found by a jury "to sustain a conviction" under § 5-64-401(a)(1)(i) (2000). *See Ford*, 888 F.3d at 928 (citing *Mathis*, 579 U.S. at 504). "[T]he modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque. It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." *Mathis*, 579 U.S. at 513–14 (citation omitted). "[A]n ACCA penalty may be based only on what a jury '*necessarily* found' to convict a defendant (or what he *necessarily* admitted)." *Id.* at 515 (emphasis added).

---

at *1 (Ark. Nov. 8, 1993) (citing *Pitts* for the proposition that convictions for cocaine and marijuana do not violate double jeopardy because they are classified under different sections of the statute).

### B. Whether Arkansas Prohibited More Isomers of Cocaine Than Federal Law at the Time Mr. Farmer Committed the Purported Predicate Offenses

For the benefit of the record on appeal, the Court addresses the specific question whether Arkansas prohibited more isomers of cocaine than federal law at the time Mr. Farmer committed the alleged predicate offenses. Under Eighth Circuit precedent, "a drug statute that criminalizes even one additional isomer does not qualify as a 'serious drug felony.'" *United States v. Owen*, 51 F.4th 292, 296 (8th Cir. 2022) (per curiam); *see also United States v. Myers*, 56 F.4th 595 (8th Cir. 2022). This is the case even where prosecution of a particular isomer is unrealistic, unless the statutory or regulatory language is ambiguous as to what it prohibits. *See Owen*, 51 F.4th at 296 (citation omitted). The Court first reviews the statutory language and recounts the expert testimony before proceeding to its discussion.

#### 1. Arkansas and Federal Codes

##### i. Arkansas Law

The predicate convictions at issue were under Arkansas Code § 5-64-401(a)(1)(i) (2000),[5] which prohibits, *inter alia*, the delivery or possession with intent to deliver a "narcotic drug." Section 5-64-101 states:

> (1) "Narcotic drug" means any drug which is defined as a narcotic drug by order of the Director of the Department of Health. . . .
>
> (2) "Narcotic drug" ***also*** means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:
>
>     . . .

---

[5] Farmer committed the offense conduct for the predicate offenses in 2000 and 2001. There are no material differences in the statutes between these two years.

(D) Cocaine, its salts, *optical and geometric isomers*, and salts of isomers;

. . .

Ark. Code Ann. § 5-64-101(o) (2000) (emphasis added).

Importantly here, the criminal code incorporates the definition of "narcotic drug" found in the administrative schedules promulgated by the Department of Health. Ark. Code Ann. § 5-64-401(o)(1) (2000). This incorporated definition is found at Arkansas Administrative Code 007.07.97–001, section III, sched. II (1997)[6] (now codified at Ark. Admin. Code 007.07.2, section III, sched. II) [hereinafter "administrative code" or "Ark. Admin. Code, sched. II(b)"], which states:

**Schedule II**

. . .

(b) **Narcotic Drugs:** Substances, vegetable origin or chemical synthesis. Unless specifically excepted or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:

. . .

(4) Coca leaves (9040) and any salt, compound, derivative, or preparation of coca leaves, (*including cocaine* **(9041)** and ecgonine (9180) *and their salts, isomers, derivatives and salts of isomers and derivatives*), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include

---

[6] Defendant obtained the 1997 version of the administrative code from the Arkansas Register and provided it to the Court as Exhibit A to their Sentencing Memorandum. *See* Doc. 75, pp. 10–27. The Government did not object to the Court using this as an accurate representation of the administrative code at the time Farmer committed the offense conduct in question.

decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

. . .

Ark. Admin. Code, sched. II(b) (emphasis added); *see id.* at section I (stating the schedule is "promulgated pursuant to" §§ 5-64-201 and 5-64-216); *see also* Ark. Code Ann. § 5-64-201(a) (2000) (directing the director of the Department of Health to "administer subchapters 1–6 of this chapter," allowing the director to "add substances to or delete or reschedule all substances enumerated in the schedules," and listing considerations for the director); Ark. Code Ann. § 5-64-216 (2000) ("The director shall revise and republish the schedule annually.").

In summary, Arkansas defines "narcotic drug" both in its criminal code and administrative code—the former includes cocaine's "optical and geometric isomers," while the latter includes "cocaine [ ] and ecgonine [ ] and their . . . isomers."[7]

## ii. Federal Law

Similar to Arkansas, the federal definition of "narcotic drug" is found both in statute and regulation. But unlike Arkansas, both federal definitions limit prohibited cocaine isomers only to "optical and geometric isomers":

[ ] The term "narcotic drug" means any of the following whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

---

[7] The Court notes, in contrast to its listing of cocaine, the state administrative code limits the type of isomer for other controlled substances. For example, in schedule II, the Administrative Code specifically bans the "optical isomers" of amphetamines, Ark. Admin. Code, sched. II(d)(1), and limits the isomers of opiates to those that are "possible within the specific chemical designations" listed. Ark. Admin. Code, sched. II(c). And for hallucinogens in schedule I, the Administrative Code specifically states, "for purposes of this paragraph only, the term 'isomer' includes the optical, position[al,] and geometric isomers)." Ark. Admin. Code 007.07.97–001, section III, sched. I(d) (1997).

. . .

[ ] Cocaine, its salts, ***optical and geometric isomers***, and salts of isomers.

. . .

21 U.S.C. § 802(17)(D) (2000) (emphasis added); 21 C.F.R. § 1300.01(30)(iv) (2000) (emphasis added).

This limitation of cocaine's isomers is also found in the schedules setting forth the controlled substances. *See* 21 U.S.C. § 812, sched. II(a)(4) (2000) (including cocaine's "optical and geometric isomers" as schedule II controlled substances); 21 C.F.R. §1308.12, sched. II(b)(4) (2000) (including as a schedule II controlled substance "cocaine [ ] and ecgonine and their [ ] isomers"); *see* 21 C.F.R. § 1300.01(b)(21) (2000) ("As used in § 1308.12(b)(4) of this chapter, the term isomer means the optical or geometric isomer.").

* * *

With the exception of Arkansas's administrative code, all definitions above— including the federal definitions—limit their prohibition of cocaine's isomers to its optical and geometric isomers. *See* Ark. Code Ann. § 5-64-101(o)(2) (2000); 21 U.S.C. § 802(17)(D) (2000); 21 C.F.R. § 1300.01(30)(iv) (2000); *see also* 21 U.S.C. § 812, sched. II(a)(4) (2000); 21 C.F.R. §1308.12, sched. II(b)(4) (2000) (as limited by 21 C.F.R. § 1300.01(b)(21)). Arkansas's Administrative Code, however, includes cocaine's isomers in the definition of "narcotic drug" without limitation. Ark. Admin. Code, sched. II(b).[8]

---

[8] It appears Arkansas's administrative code adopted the relevant language from 21 C.F.R. § 1308.12, sched. II(b)(4) (2000), without adopting 21 C.F.R. § 1300.01(b)(21) (2000)'s limiting definition. Without that companion language, Arkansas's administrative code is not similarly narrowed.

### 2. *Expert Testimony*

On January 17, 2025, the Court held an evidentiary hearing where it received testimony from the Government's expert, Tara Lucas, Chief Forensic Chemist at the Arkansas state crime lab. The Court observes the following from Lucas's testimony.

Isomers are molecules that have the same chemical formula, but their atoms are connected differently. Generally speaking, there are four types of isomers:

- **optical isomers**, which have the same connectivity of their atoms but are not super-imposable because they are mirror images; using the human body as an analogy, optical isomers are like two hands that can mirror one another palm-to-palm, but cannot be super imposed because they do not match when you lay one on top of the other;

- **geometric isomers**, which have the same connectivity of their atoms but are not super imposable due to their three-dimensional positioning; this is like if one person has their arm outstretched in front of them and another person (the isomer) has their arm outstretched behind them;

- **positional isomers**, which differ in that the substituent is in a different location on the parent group; this is analogous to a person (the isomer) having their left arm and right leg swapped; and

- **structural isomers** (also known as constitutional isomers), which have the same chemical formula but different arrangements of the atoms, different chemical and physical properties (i.e., appearance, boiling point, etc.), and have unique names associated with them; Lucas testified there was no analogy to the human body for structural isomers.

Lucas testified that cocaine has three types of isomers: optical, geometric, and structural. Cocaine does not have positional isomers.

According to Lucas, when the forensic lab runs a sample that comes back positive for cocaine, it means that the lab has detected a salt of cocaine, its optical or geometric isomers, or a salt of its optical or geometric isomers. If a structural isomer of cocaine were detected, the test would not come back positive for cocaine but would identify the unique name of that substance, and it would be reported by the lab under that unique name.

Lucas provided several examples of structural isomers of cocaine, such as scopolamine (an anti-nausea drug), certain metabolites naturally produced by the human body,[9] and hydromorphinol (an opiate analogue/morphine derivative).[10]

### 3. Discussion Under Myers, Owen, and Heard

When a state has an "all-inclusive definition" that prohibits all isomers of cocaine, it is broader than the federal definition which bans only "optical and geometric isomers" of cocaine. *See Owen*, 51 F.4th at 295–96 (holding that Minnesota's prohibition of "the . . . isomers of cocaine" was overly broad); *Myers*, 56 F.4th at 598 (holding that Missouri's definition of cocaine, which included "cocaine and ecgonine and their . . . isomers" was overly broad). According to *Owen* and *Myers*, such definitions are overly broad because they "swe[ep] in all isomers, including *positional*, optical, and geometric." *Myers*, 56 F.4th at 598.[11] Before discussing *Owen* and *Myers*, however, this Court first addresses the fact that Arkansas has two definitions of "narcotic drug" through which it prohibits cocaine.

#### i. Two State Definitions

As a threshold matter, the parties dispute which Arkansas definition the Court should look to in assessing the breadth of "narcotic drug" under state law. The

---

[9] The definition of narcotic drug refers to substances of "vegetable origin or chemical synthesis," Ark. Admin. Code, sched. II(b), which would seem to exclude these metabolites.

[10] To highlight the distinct nature of structural isomers, Lucas testified that she did not even know that scopolamine was a structural isomer of cocaine until she was preparing to testify on this matter.

[11] In holding that Missouri's definition of cocaine included all isomers, the court in *Myers* noted that Missouri appellate courts had interpreted the state drug schedule as making all cocaine isomers illegal. 56 F.4th at 598–99. Notably, however, the Eighth Circuit conducted its own analysis as to the breadth of "isomer" prior to its citation to Missouri courts, and thus appears not to have relied on the state courts' holdings.

Government contends the Court should look only to the criminal statute, while Farmer argues the Court should look to the administrative code.

The Eighth Circuit addressed the issue of dueling state definitions in *United States v. Heard*, 62 F.4th 1109 (8th Cir. 2023). There, the Eighth Circuit held the defendant's prior drug convictions for MDMA, a hallucinogen, could not serve as ACCA predicate offenses because state law criminalized more isomers than federal law. Importantly in *Heard*, the state had two definitions of hallucinogen—one in the criminal statute and one in the administrative rules promulgated by the state board of pharmacy.

In *Heard*, the state criminal code defined hallucinogen as "any hallucinogen listed in [the criminal statute] *or* [the administrative rules]." *Id.* at 1112 (emphasis added). The state *administrative rule* matched the scope of the federal regulation, including "optical, positional, [and] geometric" isomers of MDMA in the definition of hallucinogen. *Id.* The state *criminal statute*, however, banned "isomers of the listed hallucinogens, including MDMA, without reference to the type of isomers penalized." *Id.* at 1113. The Eighth Circuit made clear that a court should look to *both* definitions to determine the scope of the state's law because "the use of the conjunction 'or'" meant that "placement on either list [was] sufficient to penalize a substance under [state] law." *Id.* at 1112. In other words, "[i]f an isomer is prohibited by [the administrative rules] or [the criminal statute], but not by federal

---

After holding an evidentiary hearing on this issue in the Eastern District of Arkansas, The Honorable Brian Miller granted the government's motion to certify questions regarding Arkansas's administrative code's definition of "isomer" to the Arkansas Supreme Court in 2023. Doc. 78-5, pp. 1–4; *see United States v. Lee*, No. 4:21-CR-00306, ECF 83 (E.D. Ark.). The Arkansas Supreme Court denied the motion to certify. (Doc. 78-5, p. 13). Taking judicial notice of the docket in *Lee*, the Court notes that Judge Miller ultimately sentenced the defendant to 120 months and, thus, infers that Judge Miller decided not to apply the ACCA enhancement, which would have mandated a fifteen-year minimum at that time. *Lee*, No. 4:21-CR-00306, ECF 97.

law, the [state] law is broader than federal regulations." *Id.* at 1112. Consequently, the court in *Heard* held that the state's statute was overly broad because it "potentially penalize[d] all isomers of MDMA." *Id.* at 1113. In so holding, the court rejected the argument that the state administrative rule should be read as limiting the criminal statute's reference to isomers. *Id.*

*Heard* is helpful to the Court's discussion here. Arkansas's statute criminalizing narcotic drugs explains, "'Narcotic drug' means any drug which is defined as a narcotic drug by order of the Director of the Department of Health," and "'Narcotic drug' *also* means any of [the controlled substances listed in subsection (o)(2)]." *See* Ark. Code Ann. § 5-64-101(o) (2000) (emphasis added). Just like the definition of hallucinogen in *Heard*, Arkansas has two definitions of narcotic drug—one in the criminal statute and one in the administrative code. Also like in *Heard*, only one of these definitions matches the federal definition, while the other includes cocaine's isomers without limitation.[12] So, as in *Heard*, "[i]f an isomer is prohibited by [the administrative code] or [the criminal statute], but not by federal law, the [state] law is broader than federal regulations." 62 F.4th 1112.

### ii. Scope

As discussed, Arkansas's definition of narcotic drug is found in both its criminal statute, Ark. Code Ann. § 5-64-101(o)(2) (2000), and its administrative code, Ark. Admin. Code, sched. II(b). And although the definition found in the criminal code is consistent with federal law and includes only cocaine's optical and geometric isomers, the administrative code definition includes "cocaine [ ] and ecgonine [ ] and their salts,

---

[12] The Court notes that here, unlike *Heard*, Arkansas's *criminal statute* matches the federal definition, while its *administrative code* fails to limit the type of isomers of cocaine.

isomers, derivatives and salts of isomers and derivatives." Ark. Admin. Code, sched. II(b). This is identical to the language in *Myers* that the Eighth Circuit held to be overly broad. 56 F.4th at 598.

Of course, in *Myers*, the Eighth Circuit held that "Missouri's definition, . . . swept in all isomers including *positional*, optical, and geometric." *Id.* And the expert testimony in this case dispels the idea that the state administrative code's all-inclusive definition sweeps in positional isomers of cocaine because such isomers do not exist.[13] This does not make this line of cases inapplicable, however. As the court held in *Owen*, *Myers*, and again in *Heard*: all-inclusive definitions are overly broad because they "sweep[ ] in any substance with 'the same chemical composition' as cocaine, even if it has a different 'structural form.'" *Owen*, 51 F.4th at 295 (quoting *Dictionary of Science and Technology* 1151 (1992)); *Myers*, 56 F.4th at 598 (citation omitted); *Heard*, 62 F.4th at 1113 (citation omitted). The Eighth Circuit's dictionary definition of isomer is consistent with Lucas's testimony that isomers have the same chemical formula with differently arranged atoms. Arkansas's definition sweeps in structural isomers (i.e., a substance with "the same chemical composition as cocaine, even [though] it has a different structural form"). *See Owen*, 51 F.4th at 295. And, according to *Owen*, if state law "criminalizes even one additional isomer," convictions under that law "do[ ] not qualify as a 'serious drug felony'" under the ACCA. *Id.* at 296.

---

[13] In light of the expert testimony, it strains credulity to say the state law here could be overly broad because it encompasses non-existent positional isomers of cocaine. *See United States v. Turner,* 47 F.4th 509 (7th Cir. 2022) (holding a state's prohibition of esters of cocaine was not overly broad because esters of cocaine do not exist, so the prohibited conduct was physically impossible); *see also id.* (Jackson-Akiwumi, J., concurring) (characterizing the majority opinion as deviating from the "classic" categorical approach, and instead finding the statute ambiguous and applying the realistic probability test).

Absent the binding decision in *Meux*, applying *Owen* and *Myers* in a case where state law sweeps in structural isomers of cocaine is supported by the Eighth Circuit's decision in *Heard* and the Second Circuit's decision in *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023). In *Heard*, the Eighth Circuit determined that the state criminal code's all-inclusive definition limited more isomers of MDMA than did the state administrative code and federal definition, both of which prohibited only optical, geometric, and positional isomers of MDMA. *Heard*, 62 F.4th at 1113. In other words, the court recognized that the inclusion of isomers other than optical, geometric, and positional can make a state law overly broad.

In *Minter*, the Second Circuit considered New York's definition of cocaine—which is identical in relevant part to the language in Arkansas's administrative code—and found that it was overly broad. 80 F.4th at 410. There, the government suggested that the court limit New York's definition to only include certain isomers in order to "avoid the absurd result of including thousands of isomers of cocaine in New York's definition, including some drugs approved by the Food and Drug Administration." *Id.* at 412. The court rejected this argument because "[c]onstitutional isomers [i.e., structural isomers] were known to exist when the New York Legislature added the term 'isomers' to the definition of cocaine in 1978," and the legislature "nevertheless made a policy choice to define cocaine as broadly as possible without any limitation on the types of cocaine isomers it includes." *Id.* Thus, the court concluded that it would not rewrite the statute to exclude structural isomers.

According to *Owen*, *Myers*, *Heard*, and *Minter*, a state law that prohibits all isomers of cocaine, including structural isomers, is broader than the federal law that limits its

18

prohibition to optical and geometric isomers of cocaine. If the Court were to follow this line of cases, it would find that Arkansas's definition of "narcotic drug" is overly broad.[14]

### iii. Realistic Probabilities Test

The realistic probabilities test "requires a party to 'show a realistic probability that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Heard*, 62 F.4th at 1113–14 (quoting *Gonzalez v. Wilkinson*, 990 F.3d 654, 660 (8th Cir. 2021)). But the Eighth Circuit only applies this test when a statute is ambiguous. *See id.* at 1114. If a statute is ambiguous, a defendant is "required to show that there was a realistic probability that [the state] would use this statute to criminalize isomers of [the relevant substance]" that are not included in the federal definition. *Id.*

In *Owen*, the Eighth Circuit declined to apply the realistic probabilities test because the definition of cocaine, which included "the . . . isomers of cocaine" was "unambiguously broad," such that the "realistic probability" was "evident from the language of the statute

---

[14] The Court is cognizant of Arkansas's rules of statutory construction which instruct that a court should "not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent." *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 100 (2008). Though the interpretation here appears somewhat absurd to the Court, it is not clear that it is contrary to the legislature's intent. Further, overwriting the plain language would conflict with other cardinal rules of statutory construction: to "giv[e] the words their ordinary and usually accepted meaning in common language" and to "construe[ ] the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible." *Id.*

In similar cases, the Eighth Circuit has held that "isomers" plainly includes *all* isomers—and this is supported by Lucas's expert testimony that structural isomers are *conclusively* isomers. In *Heard*, the Eighth Circuit determined that limiting "isomers" to only certain types of isomers would "render superfluous the language" of the statute and conflict with a commonsense reading. 62 F.4th at 1113. The court also found overbreadth in *Myers*, where state rules of construction instructed courts to look beyond the plain language where it would yield illogical results. 56 F.4th at 600 (Loken, J., dissenting).

itself." 51 F.4th at 296. Then in *Myers*, the Eighth Circuit concluded, "the text of the Missouri drug schedule"—which is identical to the relevant language in the Arkansas administrative code—"plainly criminalized all isomers of cocaine," so the court's "inquiry ends there." 56 F.4th at 599 (citing *Owen*, 51 F.4th at 296). And in *Heard*, the Eighth Circuit again concluded there was no ambiguity and refused to apply the realistic probabilities test, despite there being two different state definitions of hallucinogen. 62 F.4th at 1114. Under *Owen*, *Myers*, and *Heard*, Arkansas's inclusion of "cocaine and . . . [its] isomers," is not ambiguous, and the realistic probabilities test would not apply.[15] *See also Minter*, 80 F.4th at 413 ("[T]he realistic probability test applies only as a backstop when a state statute has indeterminate reach. It has no place where, as here, the statute's scope is plain. . . . Here, the New York statute applies on its face to all cocaine isomers; the CSA does not." (cleaned up)).

* * *

To summarize, because Arkansas's administrative code includes all isomers in its definition of "narcotic drug," it is overly broad under *Myers*, *Owen*, and *Heard*; and because such all-inclusive language is not ambiguous under Eighth Circuit precedent, the realistic probabilities test would not apply. Put differently, despite the state-court judgments specifying that Farmer was convicted of possession and delivery of *crack cocaine*, these predicate offenses would not qualify as "serious drug offense[s]" under

---

[15] Consequently, the Court would not consider Lucas's testimony regarding the realistic probability of a structural isomer of cocaine being flagged by the lab or prosecuted by the government.

this line of cases because at the time of his offense conduct, Arkansas criminalized structural isomers of cocaine and federal law did not.

Despite this being the legally correct result under *Myers*, *Owen*, and *Heard*, the Court is not convinced it is a particularly sensible conclusion.[16] And, importantly, the Court does not make such a conclusion here, as it is bound by *Meux*.

### III. CONCLUSION

Therefore, because the Eighth Circuit in *Meux* held that § 5-64-401(a) constitutes a serious drug offense under the ACCA, the Court holds that Defendant Torrance Farmer's objection should be **OVERRULED**.

**IT IS SO ORDERED** on this 22nd day August, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[16] See Judge Loken's dissent in *Myers* on overbreadth and ambiguity. *See* 56 F.4th at 600–03.